[Civil No. 4006.  Filed November 21, 1938.]

[84 Pac. (2d) 456.]

CONNIE CLARE, Petitioner, v. J. A. MALIA, Utah Bank Commissioner, Receiver of the INTER-MOUNTAIN BUILDING AND LOAN ASSOCIATION, OF UTAH, a Corporation, Defendant-Employer, THE INDUSTRIAL COMMISSION OF ARIZONA, J. NEY MILES, L. C. HOLMES and SAM PROCTOR, Members of said Industrial Commission of Arizona, Respondents.

Mr. Frank Dykes and Mr. E. E. Selden, for Petitioner.

Mr. Don C. Babbitt and Mr. Howard A. Twitty, for Respondents.

LOCKWOOD, J. — Intermountain Building and Loan Association, a Utah corporation, hereinafter called the company, was for many years operating a building and loan association in the states of Arizona and Utah. It finally went into bankruptcy, and from March 22, 1934, to November 30, 1935, its affairs were operated by J. A. Malia, who was the state bank commissioner for the state of Utah, as a receiver in bankruptcy. The company had made many loans on property in Arizona, and had been compelled to foreclose some mortgages which it held. As a result of these foreclosures, it was the owner of the Westward Ho Garage, located in Phoenix, which was under lease to J. R. Hymer up to July 1, 1935. On June 10th of that year, the Industrial Commission of Arizona, hereinafter called the commission, issued a workmen's compensation insurance policy to Malia, and it is the

interpretation of this policy which is the basis of this appeal.

On July 1st the company took over the Westward Ho Garage from Hymer, and operated it until November 1st of the same year. Connie Clare, hereinafter called petitioner, had been in the employ of Hymer, and at first Malia left him in general charge of the garage, but shortly thereafter another man was placed in charge, and petitioner thereafter merely serviced and parked cars in the garage, performing the usual duties of such an employee. On the 28th of September, 1935, he received an injury arising out of and in the due course of his employment, and in September, 1936, nearly a year later, made application to the commission for compensation for the injury. After a careful investigation, the commission made the following findings and award:

## "Findings.

"1. That on or about September 28, 1935, the above-named applicant, while employed in the State of Arizona, sustained an injury by accident arising out of and in the course of his employment by the above-named defendant employer, at the Westward Ho Garage, Phoenix, Arizona.

"2. That the business of the above-named employer at said time and place was not covered under the Workmen's Compensation Law of Arizona by any insurance contract issued by the Industrial Commission of Arizona.

"3. That the Industrial Commission of Arizona has failed to obtain jurisdiction over the person of J. A. Malia, Utah Bank Commissioner, Receiver of the Intermountain Building and Loan Association of Utah, a corporation, or the successors to said employer.

## "Award.

"Now, therefore, it is ordered that said proceeding be dismissed by reason of lack of jurisdiction.

"It is further ordered that any party aggrieved by this award may apply for rehearing of the same by

filing application therefor at the office of this Commission within twenty days after the service of this award, as provided by the rules and regulations of this Commission.''

And after the usual application for rehearing was denied, the matter was brought before us for review.

It is agreed that the sole question for our consideration is whether or not the insurance policy issued by the commission to J. A. Malia, as receiver, on the 10th day of June, 1935, covered the injuries received by petitioner. This policy was on the form generally used by the commission for indemnifying employers against liability for compensation, and was issued upon the application of Malia, as receiver in charge of the Intermountain Building and Loan Association in Liquidation. In the application the location of the business of the insured was stated as 313 Luhrs Building, Phoenix, and the description of the work in which its employees were engaged, together with the estimated payroll and rate, was given as follows:

| "Class No. | Description of all Classes of Work | Estimate of Semi-Annual Payroll | Rate | Advance Premium |
|---|---|---|---|---|
| 7380 | Investigators and Collectors | 3000.00 | 2.54 | 76.20 |
| 8810 | Employees engaged exclusively in clerical office work | 3840.00 | .093 | 3.57 |
| | | | | 79.77" |

The application contained also the following provision:

"14. . . .

"In the event you desire to restrict or to extend the coverage provided by this policy, you may do so by notifying the Commission by wire and the securing of their confirmation of your request."

"17. The policy of the Commission affords complete protection, without limit, against liability un-

der the Compensation Law as regards the employees covered. . . . ''

The policy as issued thereon contained, among other things, the following clauses:

(A) ''Except as hereinafter provided, the earnings shall include all remuneration of every kind, earned by all officials and employees within the meaning of the Workmen's Compensation Law, except those officials and employees specifically excluded from coverage under this policy. (Read carefully lines 114 to 134 on second page.)''

(B) ''This policy shall cover all persons whose earnings are required by this policy to be included for computation of premium, except that, unless specifically stated in the schedule of this policy or covered by endorsement hereon. This policy does not cover the following persons: (Exceptions given),''

and a schedule, showing the name of the insured, its place of business, and the classification of the employees covered, as follows:

## ''SCHEDULE.

''Name of Insured: J. A. Malia, Utah Bank Commissioner and/or Herbert Taylor, Examiner in Charge d.b.a. Intermountain Building & Loan Association in Liquidation, 313 Luhrs Building, Phoenix, Arizona, County of Maricopa.

| "Classification No. | Principal Work of Insured. | Location of Work. | Estimated Semi-Annual Earnings of Employees | Rate per $100 of Earnings | Advance Premium |
|---|---|---|---|---|---|
| 7380 | Investigators and Collectors | | 3000.00 | 2.54 | 76.20 |
| 8810 | Clerical office employees | | 3840.00 | .093 | 3.57 |

Total Advance Premiums  79.77"

It is admitted that the special exceptions of clause (B) did not affect the petitioner's rights. The question then is, does a policy of this character insure the petitioner?

It is the contention of the commission that the policy shows, when considered in connection with the application and the oral testimony, that it was intended by both the commission and the insured to cover only office employees working out of the general office of the company at 313 Luhrs Building, such as collectors and accountants, and the bookkeepers whose work was exclusively clerical and confined to such office, and not to include employees working in the Westward Ho Garage.

It is urged by petitioner that the application and parol evidence may not be considered in interpreting the policy, and that if such evidence be rejected, petitioner is clearly covered by the policy. In his opening brief, he apparently contended that when an employer took out insurance with the commission, such insurance, as a matter of law, must cover all employees of every nature in the service of the insured, regardless of what business they might be engaged in, if they were of a character covered by the compensation law (Revised Code 1928, section 1384 et seq.), and that neither the employer nor the commission would be permitted, as a matter of public policy, to enter into a contract of insurance which failed to cover any of such employees. In his closing brief, however, he has apparently abandoned this contention, and admits that if an employer is engaged in a number of separate businesses, he may insure the employees in one and fail to insure those in another, if he so desires, subject, of course, to the statutory rules covering a failure to secure proper insurance. There is no mandatory provision of our statutes that an employer is compelled to insure all of his employees in all the different occupations which he carries on, in one and the same policy, and the weight of authority in other states with similar statutes is that it is not necessary. *Barron* v.

*Standard Acc. Ins. Co.*, 122 Tex. 179, 53 S. W. (2d) 769; *Simpkins* v. *Steffen,* 255 N. Y. 65, 174 N. E. 64; *Anderson's Case,* 276 Mass. 51, 176 N. E. 518. We, therefore, consider just what employees were covered by the terms of the policy. In the absence of a statute fixing a different rule, we think contracts of workmen's compensation insurance, such as that involved in the present case, are subject to the same rules of construction as any other form of insurance contract. One of these rules of construction is that the contract must be construed as a whole, instead of by taking isolated sections thereof alone and following their literal language. The vital provisions, we think, are clauses (A) and (B) as set forth above, together with the schedule contained in the policy. The policy, after providing that the premium is based upon rates determined by classification of the employees as to occupation, and their earnings, states specifically that these earnings "shall include all remuneration of every kind earned by all employees within the meaning of the workmen's compensation law," and then says that the policy "shall cover all persons whose earnings are required by this policy to be included for computation of premium." If this were all bearing on the subject of what employees were covered, it might plausibly be argued, as is contended by petitioner, that every employee of the insured, no matter where and how engaged, was covered by the policy, provided only that his work was of the class which made him a beneficiary of the general provisions of the compensation law. The policy, however, in addition to this, also contains as an integral part of schedule which sets forth the name of the insured, the place where the business is conducted, and a detailed and careful classification of the kind of work to be performed for the insured, together with an estimate of the earnings of the em-

ployees, and the rate and amount of the advanced premium.

■■ There can be but one possible purpose for the requiring of such a schedule—it is to inform the commission of whom it is insuring, what the particular occupation of the insured is, and his rate of pay, for the premium collected is necessarily determined by these considerations. The compensation law bases the amount of compensation upon the wages received by the injured party. In order to ascertain the amount which will probably be necessary to provide the compensation due from any particular employer to his employees, the commission must ascertain as nearly as possible not only the wages of the employees covered, but also the character of the work they are doing, for it is a notorious fact that the chance of injury varies greatly in accordance with the character of the work performed. If, therefore, the commission is to collect a premium sufficient to cover the payments due under the compensation law, it must, if it is to avoid bankruptcy, know as nearly as possible, in advance, the character of the work to be performed for an employer, so that it may determine the rate to be charged for insurance, and the probable total payroll of each classification, so that it may calculate the amount of the premium. It is true that the total number of the employees cannot be absolutely and definitely determined in advance, and a provision is, therefore, inserted in the policy providing for adjustment of premiums every six months, but we think the policy contemplates that the character of the work to be performed, so far as it is known to the parties, which determines the rate of premium to be charged, is to be included in the policy. Of course, this does not mean that if a new employee is added in the specific business insured, who was not classified in the original

schedule, that he is not covered by the policy. That is provided for by the clause in regard to the adjustment of premiums. But an employee who cannot be reasonably said to be engaged in the general business shown by the face of the policy, taking all of its terms together, is not insured by that particular policy. The evidence shows clearly that at the time the policy was taken out, the only business of Malia, as receiver, was the liquidation of the company, and that the Westward Ho Garage, by which petitioner was employed, was operated by another party. Most of the work of liquidation of any bankrupt is necessarily the collection of the outstanding accounts of the company, and the settlement of its liabilities. For this purpose, investigators, accountants and bookkeepers are obviously the necessary and proper employees. It is true that it might become necessary for a receiver, in the course of liquidation, to take over and operate some independent going businesses on which the bankrupt has liens of various natures, but we think that such conduct by a receiver is not a part of his principal business, but rather an independent business operated incidentally. That this was believed by Malia to be true is shown by the fact that he had taken over, for the purpose of operation in the course of liquidation, the Ingleside Golf Course, and that in order to insure the employees of that business, obviously engaged in occupations very different from those covered by the policy involved herein, an entirely distinct and independent policy issued by the commission, which specifically covered the golf course, was assigned to Malia. Had it been the intention of Malia to insure the employees of the Westward Ho Garage, his proper and natural course would have been to have had a similar independent policy issued for such employees. We think, therefore, that the business of

operating a garage, taken over in the course of liquidation of a bankrupt building and loan association, is an entirely distinct and independent business from the office work and collections necessary to liquidate such association, and that as a matter of law a policy covering the one business does not necessarily cover the other, and that the policy in question shows on its face it was not intended to include the employees engaged in the garage business. Since this is true, we need not consider the questions raised in regard to the admissibility of parol evidence to vary the terms of a contract of insurance.

The award is affirmed.

McALISTER, C. J., and ROSS, J., concur.