405 P.2d 833

**Fern S. DROZ, Appellant,**

v.

**PAUL REVERE LIFE INSURANCE CO.,**
a corporation, Appellee.*

**No. 2 CA–CIV 28.**

Court of Appeals of Arizona.

Sept. 24, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7573. The matter was referred to this Court pursuant to § 12–120.23, A.R.S.

582

---

Earl Terman, Tucson, for appellant.

Spaid, Fish, Briney & Duffield, by Richard Duffield, Tucson, for appellee.

HATHAWAY, Judge.

Fern S. Droz, plaintiff below, appeals from a judgment entered in the Superior Court of Pima County in favor of the defendant, Paul Revere Life Insurance Company. Briefly, the facts are as follows.

The defendant insurance company issued to Giles Motorama, Inc., Giles Motor Center, Inc., and Giles Motordom, Inc., its group insurance policy, effective on October 10, 1959. The insured, Harold E. Droz, deceased husband of the plaintiff, was employed as a salesman for Giles Motor Center, Inc., and became an insured under the policy on January 2, 1960. In addition to the group insurance policy issued to the employer, the defendant insurance company issued for delivery to the insured employee an individual certificate summarizing the insurance coverage provided for such employee.

On February 6, 1960, Harold E. Droz terminated his employment with Giles Motor Center, Inc., and went to work for Young Buick, Inc. He was killed in an automobile accident in Tucson on February 23, 1960. Pursuant to the provisions of the "payment during conversion privilege period" clause contained in the policy, the defendant insurance company paid to the plaintiff, as designated beneficiary, the sum of $4,000. This was the amount of the employee group life insurance benefit established by the schedule of insurance contained in the policy. Subsequently, the plaintiff submitted a claim for accidental death and dismemberment benefits in the sum of $4,000 which was refused and for which the plaintiff brought suit. The lower court granted defendant's motion for summary judgment.

We must resolve the question: Are accidental death benefits payable under the "payment during conversion privilege period" clause of the policy?

Examination of the subject policy discloses a wide variety of insurance benefits, including life insurance benefit, accidental death and dismemberment benefit, hospital, surgical, and medical benefits. The format of the printed policy is pertinent to the problem at hand. The provisions governing each benefit coverage are set forth under the particular title designating the specific benefit dealt with therein. In addition to the titles preceding each category, the bottom of each page included in the particular category bears letters designating the category and page number of the particular benefit, e. g., "EGL—1" denoting employee group life insurance benefit, page 1. Each category is a self-contained unit in that it embodies the insuring provisions relative to the particular benefit therein described.

A specific section of the insurance policy is devoted to general provisions applicable to all benefits. One such provision states that the insurance of an employee shall automatically cease upon his termination of employment. In the case at bar, defendant insurer paid life insurance benefits to the plaintiff despite the cessation of decedent's insurance coverage because of termination of employment. This payment was made under the "payment during conversion privilege period" clause which is included in the policy under the category denominated *Employee Group Life Insurance Benefit*. A subheading under this section is labelled *Conversion Privileges* and the clause thereunder entitled *Termination of Employment* provides that an employee whose insurance ceases because of termination of employment is entitled to have the company issue to him, without evidence of insurability, an individual policy of insurance without disability or other supplementary benefits, if application is made and the

first premium paid within 31 days after termination of employment. The exclusion of disability or other supplementary benefits specifically limits the conversion privilege to the life insurance benefit. The "payment during conversion privilege period" clause following, but relating to the foregoing conversion privilege, provides:

"If any employee dies during the 31 days while entitled to convert to such insurance in accordance with the above paragraphs, *then the insurance company will pay the amount of insurance which was in force on the date of termination of such insurance immediately upon receipt of due proof of death of the employee.*" (Emphasis ours.)

■ The plaintiff takes the position that the emphasized portion above refers to all insurance benefits in force on the date of termination. She further contends that if such was not intended by the insurer, the language is at best ambiguous and such ambiguity should be construed most strongly against the drafter of the contract, the insurance company. We agree that the section standing alone is susceptible of the interpretation urged by plaintiff, but the policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all of its provisions. Globe Indemnity Co. v. Teixeira, 230 F.Supp. 451, 455 (D.C.Hawaii 1964); Miller v. Madison County Mut. Auto. Ins. Co., 46 Ill.App.2d 413, 197 N.E.2d 153, 156 (1964); Clare v. Malia, 52 Ariz. 552, 558, 84 P.2d 456 (1938). We are mindful that in determining whether an ambiguity exists, the language must be considered from the standpoint of one who is not trained in law or in the insurance business. Trousdell v. Equitable Life Assur. Soc. of U. S., 55 Cal. App.2d 74, 130 P.2d 173, 177 (1942).

Reading the contract in its entirety, we find no ambiguity. The clause in question is physically set forth under the benefit denominated *Employee Life Insurance Benefit*, and is manifestly intended to refer to that category of insurance.

■ Careful scrutiny of the policy further establishes an intention to limit the application of the clause in question to the category in which it is found. There can be no doubt that the first phrase "such insurance" in the above-quoted clause refers to the benefit covered in the conversion period clause which applies only to employee life insurance. But what is the meaning of "insurance" as subsequently used in the clause? We must apply the usual rule of contract construction that general words used after specific terms will be restricted to the things previously specified. 29 Am.Jur., Insurance § 254; 12 Am.Jur., Contracts § 244. See Gohlke v. Hawkeye Commercial Men's Ass'n, 198 Iowa 144, 197 N.W. 1004, 1008, 35 A.L.R. 1177 (1924); Allen v. Berkshire Mut. Fire Ins. Co., 105 Vt. 471, 168 A. 698, 700, 89 A.L.R. 460 (1933).

The inevitable conclusion is that when the word "insurance" is thereafter used in the same paragraph of the section dealing solely with life insurance coverage, it can mean only one thing—life insurance. To broaden the scope of its meaning would indeed create an inconsistency. We note that the unmodified word "insurance" is used throughout the entire policy. Since each benefit category deals solely with the extension of benefits applicable to the specific category, the word "insurance" can only signify the insurance benefit described in the particular category.

Furthermore, the provisions relating to extension of benefits under the life insurance section extend the coverage for a one-year period in case of total disability while the analogous provisions under the other categories specify a different period. If, as plaintiff urges, the extension of benefits under the life insurance section are to be construed to apply to all the insurance in force under the policy, the extension provisions of the other categories would be rendered meaningless.

Under the heading *Termination of an Employee's Insurance*, it is provided that the insurance of an employee shall auto-

matically cease on the cessation of premium payments except insofar as such employee's life insurance benefit may be continued in the section entitled "extended insurance benefit." This clearly indicates that the only insurance in force by virtue of the extended insurance benefit section (absent any disability factor) is the life insurance.

The "payment during conversion privilege period" clause provides for payment immediately upon receipt of due proof of death of the employee. The identical language is used to state the condition precedent to payment of the life insurance benefit while the insurance is in force. This further refutes plaintiff's contention that "insurance in force" includes accidental death benefits. Proof of death, without more, would not be sufficient to establish qualification for payment of accidental death benefits.

In construing the terms of this group insurance policy, we presume it was drafted by the insurer to comply with our statutes requiring that such policies provide conversion privileges on termination of employment.

A.R.S. § 20–1266 provides in part:

"In group life policies there shall be a provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment or of membership in the class or classes eligible for coverage under the policy, such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits, provided that application for the individual policy has been made, and the first premium paid to the insurer, within thirty-one days after the termination, and provided further that:

\* \* \* \* \* \*

"2. The individual policy is in an amount not in excess of the amount of *life insurance* which ceases because of the termination, \* \* \*." (Emphasis ours.)

A.R.S. § 20–1268 provides:

"In group life policies there shall be a provision that if a person insured under the group policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with §§ 20–1266 or 20–1267 and before such an individual policy becomes effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made."

We cannot assume that the insurer did more than required by law, particularly since the policy as a whole manifests a contrary intention. We hold that summary judgment was properly granted to the defendant.

Judgment affirmed.

KRUCKER, C. J., and RICHARD N. ROYLSTON, Superior Court Judge, concurring.

NOTE: The Honorable JOHN F. MOLLOY having requested that he be relieved, the Honorable RICHARD N. ROYLSTON, Judge of the Superior Court, Pima County, was called to sit in his stead and participate in the determination of this decision.