460 P.2d 27

**CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Appellant,**

**v.**

**Victor Allen MULLIGAN, Appellee.**

**No. I CA–CIV 978.**

Court of Appeals of Arizona,
Division 1.

Department B.

Oct. 21, 1969.

Review Denied Dec. 23, 1969.

**492**

Jennings, Strouss, Salmon & Trask, by Charles E. Jones, Phoenix, for appellant.

Charles M. Wilmer, Phoenix, for appellee.

HAIRE, Judge.

This action was commenced because the defendant insurance company refused to pay to plaintiff certain disability benefits which plaintiff claimed were due under two separate disability policies issued by defendant. It was defendant's contention that under the provisions of A.R.S. Sec. 20–1109 it was entitled to cancel both of the policies and decline coverage because of certain misrepresentations and omissions made by plaintiff in applications for the policies. Upon trial to a jury a verdict was returned for the plaintiff and judgment was entered in accordance therewith. Defendant appealed from the trial court's denial of its motion for directed verdict, from the trial court's entry of judgment on the jury's verdict, and from the denial of its motion for a new trial or for judgment notwithstanding the verdict.

The plaintiff is a licensed physician who was engaged in the general practice of medicine in Phoenix, Arizona, for several years prior to the time he became disabled in July 1963, because of advanced coronary artery disease.

Beginning February 15, 1960, when plaintiff was experiencing chest pains, and extending to the time of the signing of the second application on October 11, 1962, plaintiff had been a patient of Dr. Robert Bullington, a heart disease specialist who practices in Phoenix, Arizona. During this period of time plaintiff had eleven separate scheduled appointments with Dr. Bullington at Dr. Bullington's office.

One of the policies sued upon was issued in reliance upon information contained in an insurance application signed by plaintiff and dated July 7, 1961. The other policy was issued in reliance upon information contained in a later application, also signed by plaintiff, and dated October 11, 1962. Question No. 2 on each of the applications inquired as to whether the applicant was, to the best of his knowledge and belief, in good health and free from any physical impairment or disease. Plaintiff's response to this question was in the affirmative, except for a nondisabling osteo-arthritis of the spine.[1]

Question No. 3 on each of the applications is the one which defendant contends required the disclosure of the information withheld. That question and the answers given by the plaintiff are as follows:

(From the application dated July 7, 1961):

"3.  What medical or surgical advice or treatment have you had in the past 10 years? (State ailment, dates, duration and results)

[Answer] None"

(From the application dated October 11, 1962):

"3.  What medical or surgical advice or treatment have you had in the past 10 years? (State ailment, dates, duration and results)

[Answer] Had some trouble with my right eye two years ago caused by abscessed tooth. Cleared up with tooth extraction. All o.k. now."

1. In light of this disclosure, both policies, as issued. contained elimination riders excluding losses caused or contributed to by arthritis or rheumatism.

Although Question No. 3 inquired as to medical or surgical advice or treatment had in the past ten years, neither application disclosed the appointments with Dr. Bullington.

Defendant contends that by this failure the plaintiff concealed facts and made misrepresentations which, as a matter of law, were fraudulent and material to the risk assumed by defendant, and that the uncontradicted evidence shows that defendant would have rejected these applications if full disclosure had been made by plaintiff. The evidence fully supports defendant's contentions, and in our opinion the trial court should have granted defendant's motion for a directed verdict.

A.R.S. Sec. 20–1109 provides as follows:

"Statements as representation; effect of misrepresentation upon policy

"All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

"1. Fraudulent.

"2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

"3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise."

Although because of its statutory history there might be some question as to the proper construction of the above statute, for the purpose of this opinion we have assumed that before an insurer may set aside or cancel a policy for misrepresentations, omissions, concealment of facts or incorrect statements, the evidence must show all elements set forth in subparagraphs 1, 2 and 3 of said statute.

The first two subparagraphs of A.R.S. Sec. 20–1109 appear to be a codification of prior Arizona decisions requiring that an insurance company attempting to void a policy must prove that the applicant was guilty of *legal* or *actual* fraud, and that such fraud was material to the acceptance of the risk or hazard assumed by the insurer. Modern Woodmen of America v. Stevens, 70 Ariz. 232, 219 P.2d 322 (1950); Illinois Bankers' Life Association v. Theodore, 44 Ariz. 160, 34 P.2d 423 (1934); Mutual Life Ins. Co. of New York v. Morairty, 178 F.2d 470 (9th Cir. 1949), cert. denied, 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355 (1950); Byrnes v. Mutual Life Insurance Co. of New York, 217 F.2d 497 (9th Cir. 1954), cert. denied, 348 U.S. 971, 75 S.Ct. 532, 99 L.Ed. 756 (1955). The third subparagraph of A.R.S. Sec. 20–1109 appears to be a statutory overruling of a 1940 Arizona decision which held that it was not necessary for an insurer to prove that it would have rejected the application if it had been given knowledge of the true facts. See First National Benefit Society v. Fiske, 55 Ariz. 290, 101 P.2d 205 (1940).

Plaintiff argues that the defendant insurer did not show that any misrepresentation or concealment was fraudulent. Both counsel agree, and this court is of the opinion, that a showing of *legal* fraud is sufficient under this statute. The insured is guilty of *legal* fraud, whether or not he intended to deceive the insurer, if in the application he makes false statements concerning material facts, and the facts were of such nature that they were presumably within his personal knowledge, as distinguished from mere statements of opinion. Mutual Life Ins. Co. of New York v. Morairty, *supra*. Inasmuch as the plaintiff admitted during cross-examination that at the time he signed the insurance applications he hadn't forgotten his appointments with Dr. Bullington, it is not necessary to indulge in the presumption that the facts

were within the personal knowledge of the plaintiff. The essence of plaintiff's testimony as to why he didn't disclose this medical advice and treatment received from the heart specialist, Dr. Bullington, was that he didn't think it was important—that he didn't think he had an ailment that he was being treated for.

◾ This court recognizes that if a question in an insurance application is vague and ambiguous, a reasonable interpretation of that question by the applicant may be of controlling effect, and legal fraud may not be predicated upon an honest response based upon such reasonable interpretation. Newton v. Southwestern Mutual Life Association, 116 Iowa 311, 90 N. W. 73 (1902); Mutual Benefit Health & Accident Association of Omaha v. Reid, 279 Ala. 136, 182 So.2d 869 (1966); Purcell v. Washington Fidelity National Insurance Co., 141 Or. 98, 16 P.2d 639 (1932); Gilham v. National Life & Accident Insurance Co., 104 Ga.App. 459, 122 S.E.2d 164 (1961); 44 C.J.S. Insurance § 232 (1945). This leads us to the major issue presented on this appeal. Plaintiff admits that there would be a basis for a finding of legal fraud if Question No. 3 in its entirety had read as follows:

"What medical or surgical advice or treatment have you had in the past ten years?"

However, there was parenthetical material added to the question, and plaintiff's argument is, first, that the parenthetical material "(State ailment, dates, duration and results)" which followed the question constituted a limitation on the request for disclosure of medical or surgical advice or treatment; second, that by reason of such limitation he was only required to disclose medical advice or treatment relating to "ailments"; and third, that the chest pains and other indispositions which resulted in his eleven visits to the heart specialist were not "ailments".

◾ The court is not persuaded that the parenthetical material (state ailment, dates, duration and results) can reasonably be considered as a limitation concerning the information to be supplied in response to the question, "What medical or surgical advice or treatment have you had in the past ten years?" Rather, the more reasonable interpretation would be that it expands and increases the detail of information required to be supplied. However, if we assume that the parenthetical material did limit Question No. 3 so that it was not necessary to disclose all of the medical or surgical advice or treatment received by plaintiff within the period involved, still we are unable to see how this excuses plaintiff's nondisclosure in the case at hand. Plaintiff cites several cases for the proposition that the terms "ailment" or "disease" as used in an insurance policy application are not to be comprehended as embracing merely transitory indispositions or temporary illnesses. Metropolitan Life Insurance Co. v. Sinett, 2 N.J.Super. 506, 64 A.2d 639 (Super.Ct.Ch.1949); Service Life Insurance Co. of Omaha Neb. v. McCullough, 234 Iowa 817, 13 N.W.2d 440, 153 A.L.R. 697 (1944); National Americans v. Ritch, 121 Ark. 185, 180 S.W. 488 (1915). A reading of these cases reveals that in these decisions the court was not attempting to lay down a restrictive definition of the word "ailment", but rather the holding was that under the facts of the particular case the undisclosed ailments were not material to the risk assumed by the insurer, and thus the insurer could not rely upon the nondisclosure of these minor ailments to invalidate the policy.

In this case, was plaintiff's ailment a minor indisposition not material to the insured risk so that plaintiff was justified in not making a disclosure of the ailments? Reviewing the facts, it is established without question that on February 15, 1960, plaintiff went to Dr. Bullington, a heart specialist, because of chest pain, and that he continued to have appointments regularly with Dr. Bullington up to and beyond

the time plaintiff signed the applications for the disability policies here involved.[2]

It is clearly established that on five of these appointments, plaintiff's blood pressure was elevated to an extent in excess of the acceptable limits of the underwriting department of defendant. In his written report to the defendant (admitted into evidence) Dr. Bullington characterized this condition as "mild hypertension".[3] He placed plaintiff on medications in the form of phenobarbital, a blood pressure medicine called "singoserp", and a tranquilizer. Plaintiff's first heart attacks occurred during December 1962, approximately two and one-half months after signing the second application.

None of the cases cited by plaintiff deal with ailments of the character here involved. On the contrary, in the only cases which have come to the court's attention, hypertension or elevated blood pressure has been treated as a serious condition, very material to the risks assumed by insurance companies, because elevated blood pressure is a suspect symptom or a cause of future complicating degenerative cardiac and circulatory diseases. Robinson v. Occidental Life Insurance Co. of California, 131 Cal. App.2d 581, 281 P.2d 39 (1955); Wageman v. Metropolitan Life Insurance Co., 24 A.D. 2d 67, 263 N.Y.S.2d 915 (1965) aff'd., 18 N.Y.2d 777, 274 N.Y.S.2d 908, 221 N.E.2d 566 (1966).

We find that plaintiff's claimed interpretation of the word "ailment" was not reasonable, and that the matters here involved were not such minor ailments or indispositions as would excuse nondisclosure by plaintiff. Under the circumstances this nondisclosure constituted legal fraud, even though there is no direct evidence that plaintiff intended to deceive the insurer.

Plaintiff further contends that even if the court should find legal fraud in plaintiff's failure to disclose the medical advice and treatment received from Dr. Bullington, still defendant cannot cancel the policies because defendant did not carry the burden of proof imposed by subparagraphs 2 and 3 of A.R.S. Sec. 20–1109. These subparagraphs require a showing that the misrepresentations or omissions were material to the acceptance of the risk or to the hazard assumed by the insurer, and that the insurer would have rejected or limited the coverage if the true facts had been disclosed.

■ The uncontradicted and unimpeached testimony of defendant's chief underwriter clearly showed the established underwriting standards and practices of the defendant, and that under these established underwriting standards and practices, the policies would not have been issued to an applicant for insurance who had shown a series of excessive blood pressure readings, as did plaintiff. In view of this testimony, the materiality of plaintiff's misrepresentations and nondisclosures cannot seriously be questioned. Testimony of defendant's underwriter was very specific as to the past practices and established standards of defendant, and did not constitute mere conclusionary statements. *Cf.* Lindenbaum v. Equitable Life Assurance Society of United States, 5 A.D.2d 651, 174 N.Y.S. 2d 421 (1958); Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R. 1270 (1922). Defendant's evidence clearly established the materiality of the misrepresentations and omissions, and that the policies would not have been issued if the true facts had been made known to defendant.

Inasmuch as the defendant established by uncontradicted evidence its right to cancel the policies here involved, the judgment entered by the trial court must be reversed.

2. These appointments with Dr. Bullington were on February 15, 1960; February 18, 1960; March 3, 1960; March 17, 1960; April 14, 1960; May 27, 1960; July 21, 1960; September 22, 1960; January 9, 1961; November 3, 1961; May 18, 1962; and November 30, 1962.

3. In oral testimony Dr. Bullington stated that in his opinion Dr. Mulligan did not have true hypertensive disease.

Upon remand the trial court is hereby directed to enter judgment for the defendant.

EUBANK, P. J., and JACOBSON, J., concur.