529 P.2d 1213

**CENTRAL NATIONAL LIFE INSURANCE COMPANY, a corporation, Appellant,**

v.

**James C. PETERSON, Appellee.**

**No. 2 CA–CIV 1619.**

Court of Appeals of Arizona,
Division 2.

Jan. 7, 1975.

Holesapple, Conner, Jones & Johnson by A. O. Johnson and G. Marshall Jones, Tucson, for appellant.

Aboud & Aboud by Michael J. Aboud, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

This case involves an application for accident and health insurance which admittedly contained incorrect answers.

The case was tried to a jury which returned a verdict in appellee's favor in the sum of $9,776.25.

Appellant claims the court erred by not directing a verdict in its favor; in giving plaintiff's instruction No. 10; and granting a judgment to the appellee based upon a finding that a heart attack constitutes an accidental bodily injury.

It is undisputed that when appellee applied for the insurance policy in question he signed an application representing, inter alia, that he had never been diagnosed as having any disease or disorder of the heart, blood or blood vessels, and that he had never had any disease or disorder of the muscles, bones, joints, limbs or back. The evidence at trial was conflicting as to what, if any, representations were made by Mr. Cohen, agent of appellant, to the appellee concerning the purpose and effect of the application. The undisputed evidence does show, however, that appellee had been hospitalized in 1963 for a back condition and also that hospital records showed a prior diagnosis of a heart condition although the medical evidence adduced by appellee at trial established that the physical findings disclosed by these records did not justify a heart condition diagnosis.

Appellee was employed by a company which had contracted with the Arizona Public Service to overhaul its electric turbines and generators. The day of the heart attack, he was assisting in the disassembly of a steam turbine. The deck from which he was working was approximately five stories high or about fifty feet from ground level. Appellee was using a twenty pound hammer to break loose bolts weighing approximately 100–150 pounds each. These bolts, plus various other parts, some weighing 150 to 400 pounds, then had to be lifted out of the turbine, lowered to ground level, and then placed on wooden blocks and covered. Appellee or a co-employee had to descent to ground level each time and unload the part that was to be stored. On the day of the attack and up until the time of the attack, which was about noon,

appellee had made some fifteen trips up and down the five-story height, climbing or descending by ladder.

As appellee was lifting a baffle from one of the bearings, he suddenly got weak and had a sharp pain in his chest that felt as though someone had stuck a hot wire down the center of his chest and both arms ached and went limp. This was his last recollection until approximately ten days later.

The evidence is undisputed that appellee had a myocardial infarction which left him totally and permanently disabled.

Appellee made a claim for benefits under the policy in question but was turned down by appellant which contended that his application for insurance misrepresented his prior medical history by failing to disclose his hospitalization at the Veteran's Hospital in Tucson in 1963 for a back strain or sprain, the hospital records for which included a third diagnosis of some sort of untreated heart problem.

This suit followed appellant's refusal to pay benefits under the policy.

## FAILURE TO GRANT A DIRECTED VERDICT

It is appellant's position that since appellee was guilty of at least legal fraud and such fraud was material to the acceptance of the risk, the court should have directed a verdict in its favor. We do not agree.

There was a dispute in the facts regarding what the insurance agent told appellee. Appellee claims he told Mr. Cohen that he had been hospitalized at the VA Hospital in 1963 and that Cohen then told him it was not necessary to go back any further than five years in answering the questions on the application for insurance. On the witness stand Cohen denied having made this statement.

Accepting appellee's version of the facts for the purposes of a directed verdict, the weight of authority supports the rule that the insurer is bound by an incor-

rect answer entered in the application by or at the direction of its agent, pursuant to such agent's suggestion or advice, or his interpretation of the question following the disclosure of the true facts by the applicant who acts in good faith. See, Annot. 26 A.L.R.3d 6, 96–103 (1969). We agree with this rule.

### ERROR IN GIVING INSTRUCTION NO. 10

Over appellant's objection, the trial court instructed the jury that it was "to disregard any testimony . . . regarding [appellee's] back condition" since this testimony had "no bearing on [appellee's] right to recover for his heart condition."

■ Can a misrepresentation as to a back condition be material to a claim for a heart condition? We believe the answer to be in the affirmative if the revelation of the back condition would have disclosed information concerning the heart condition.

A.R.S. § 20–1109 provides as follows:

"All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

1. Fraudulent.

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise."

■ The test of materiality is whether the facts, if truly stated, might have influenced a reasonable insurer in deciding whether to accept or reject the risk. First National Benefit Soc. v. Fiske, 55 Ariz. 290, 101 P.2d 205 (1940). Appellee's instruction is premised upon A.R.S. § 20–1109(3) which was added to the statute after the decision in First National Benefit Soc. v. Fiske, supra, and appears to be a statutory overruling of that case. It held that it was not necessary for an insurer to prove it would have rejected the application if it had been given knowledge of the facts. See, Continental Casualty Co. v. Mulligan, 10 Ariz.App. 491, 460 P.2d 27 (1969). In 1950 the *Fiske* case was construed as meaning it was not necessary that there be any causal connection between the cause of death and the misrepresentation. See, Mutual Life Ins. Co. v. Morairty, 178 F.2d 470 (9th Cir. 1949), cert. denied 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355 (1950).

■■ Under the state of the law as it now exists, in order for the insurer to avoid liability on the policy, not only must it adduce evidence relative to the requirement set forth in A.R.S. § 20–1109(1) and (2) but it must also show either that it would not in good faith have issued the policy; or it would not have issued a policy in as large an amount; or it would not have provided coverage with respect to the hazards resulting in the loss. It is clear that as the law now stands, if the insurer is relying on the fact that it would not have provided coverage with respect to a certain hazard, that particular hazard must be the one which actually caused the loss.

If the evidence in this case shows only that appellee incorrectly omitted the back injury from the application, then the instruction given by the court would have been correct. However, the fact that the hospital records contained a statement that appellee had a heart disease added another dimension to this case. Appellee's failure to inform the insurer of the back injury prevented investigation by the insurer which would have led to discovery of the heart disease diagnosis and which in turn would have caused a rejection of the poli-

cy. Under appellant's version of the facts, the failure to inform it of the back condition would have allowed it to avoid liability on the policy and the court erred in giving appellee's instruction No. 10.

### THE HEART ATTACK AS "ACCIDENTAL BODILY INJURY"

It is appellant's position that the heart attack suffered by appellee was not an "accidental bodily injury" thus allowing appellee benefits for five years, but instead, was a disease which under the terms of the policy is classified as a sickness. If it were classified as a sickness, then appellee would be entitled to benefits for only twenty-four months.

The term "accidental bodily injury" is not defined in the policy. It is evident, however, from reading the policy as a whole that losses resulting from accidental bodily injury and losses resulting from disease or sickness are to be treated as separate and distinct losses.

■■ Dr. Albert E. Dubin, a cardiologist, who was appellee's physician, testified that appellee had suffered from a myocardial infarction—the death of heart muscle and tissue. Prior to Dr. Dubin's initial examination, appellee had suffered an acute myocardial infarction in New Mexico, and when examined by Dr. Dubin appellee was suffering from congestive heart failure due to the infarction. Dr. Dubin concluded that the infarction was caused by his activities on the job in New Mexico. He also stated that a "heart attack" is a disease. Appellant claims that because of the doctor's testimony and the policy provisions the court erred in allowing the jury to render a verdict based upon accidental bodily injury rather than the disease or sickness provisions of the policy. Whether the heart attack is to be compensated as a bodily injury or a disease depends upon whether the disease is the effect of a bodily injury. If not, then appellee can only receive sickness benefits under the policy. Arizona does not distinguish between "accidental means" and "accidental results". Knight v. Metropolitan Life Ins. Co., 103 Ariz. 100, 437 P.2d 416 (1968). An accident is an accident whether it be in the means or the results. Appellant fears that a holding by this court in appellee's favor on this issue will allow recovery under the "accidental bodily" provision for diseases such as pneumonia or any contagious disease since contracting these diseases would be "accidental" in the sense that the victim did not intend to expose himself to the infection. Appellant's fears are not well-founded. An accidental bodily injury implies some degree of physical force, no matter how slight. The physical force in this case consisted of appellee's exertion in doing his job.

Appellant has cited several cases in support of its position which are inapposite. In Watkins v. Underwriters at Lloyds, London, 107 Ariz. 56, 481 P.2d 849 (1971), the policy provided coverage if the insured sustained any accidental bodily injury which solely and independently of any other cause, occasioned the disablement of the insured and specifically excluded any injury directly or indirectly caused or contributed to by disease. In Gorman v. American General Ins. Co., 179 S.W.2d 814 (Tex.Civ.App.1944), the court relied on Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017 (1933). The doctrine of the *Pierce* case was specifically repudiated in Phelps Dodge Corp. v. Cabarga, 79 Ariz. 148, 285 P.2d 605 (1955). The rule in the Oregon case of Thompson v. General Ins. Co., 226 Or. 205, 359 P.2d 1097 (1961), is contra to our *Watkins* case.

We conclude that the court did not err in allowing the jury to base its judgment upon the accidental bodily injury provisions of the policy

Reversed and remanded for new trial.

KRUCKER and HATHAWAY, JJ., concur.