752 P.2d 1

**STATE COMPENSATION FUND,**
Petitioner Carrier,

v.

**MAR PAC HELICOPTER CORPORA-
TION, Respondent Employer,**

**The Industrial Commission of
Arizona, Respondent,**

**The Industrial Commission of Arizona,
c/o No Insurance Department,
Respondent Carrier,**

**James A. McDonald,
Respondent Employee.**

1 CA–IC 3616.

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 15, 1987.

Reconsideration Denied Nov. 19, 1987.

Review Denied April 19, 1988.

Robert K. Park, Chief Counsel State Compensation Fund by John R. Greer, Teri A. Thomson, Phoenix, for petitioner carrier.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent The Industrial Com'n of Arizona.

Jerome, Gibson & Stewart, P.C. by Joel Friedman, Patricia Jerome Stewart, Phoenix, for respondent employer.

Stephen L. Weiss, Phoenix, for respondent employee.

## OPINION

HAIRE, Chief Judge.

In this review of an award entered by the respondent Commission in a workers' compensation proceeding, the sole dispute concerns whether the compensation insurance that the petitioner carrier (hereinafter SCF) agreed to provide the respondent employer (hereinafter Mar Pac) was voidable.[1] The administrative law judge concluded that it was not because the hazard causing the actual loss was one that the SCF had agreed to cover. We set aside the award because the SCF had a statutory right to rescind its agreement to provide coverage.

In approximately July 1984, William Donald Underwood (hereinafter Underwood) learned that a foreign fishing boat operating in the Pacific Ocean needed a helicopter, pilot, and mechanic for tuna spotting. He contacted the respondent employee (hereinafter claimant), a long-time friend and a licensed helicopter pilot with experience in tuna spotting. They agreed to begin a business together with Underwood supplying a helicopter and the claimant his

services as a pilot. After his first tour of duty on the boat, the claimant returned to Arizona and became an employee, rather than a principal, of the business. The business subsequently contracted to supply the same services to another tuna boat. Some of the crew members were foreign nationals, who sometimes were paid from foreign banks.

In November 1984, the business was incorporated. The corporate name ("Mar Pac") is an acronym based in the Spanish word for ocean and an abbreviation for Pacific. The officers were Underwood as president, his wife as secretary, and his son Michael as vice president. Underwood transferred ownership of one of the helicopters to Mar Pac in exchange for stock and leased the other one to it. Mar Pac's only source of income at this time was the tuna spotting operation. Mar Pac, however, did maintenance work in Arizona before the helicopters went to sea. Furthermore, according to Underwood, the helicopters were available for sale, and Mar Pac intended to buy, refurbish, and sell used helicopters whenever the opportunity arose.

On December 17, 1984, Michael telephoned the SCF to inquire about the cost of compensation insurance for Mar Pac. Based on information supplied by Michael and by Mrs. Underwood in a follow-up call concerning the payroll, a sales representative completed an insurance application. This application described Mar Pac's business as buying, refurbishing, and selling used helicopters. It specified only one flight operation: sending a pilot out of state to pick up a helicopter. It also indicated that Mar Pac had no other business interests in Arizona or another state. The

---

1. The respondent Commission, in its capacity as representative of the special fund, has appeared as a party at the administrative hearing and on review before this court. The special fund, established by A.R.S. § 23–1065 (amended 1986), is responsible for paying compensation benefits awarded to injured workers employed by uninsured employers. *See* A.R.S. § 23–907(B). These payments plus a penalty become a lien against the uninsured employer's property. *See* A.R.S. § 23–907(C). This potential liability of

the special fund is the basis for the Commission's standing as an advocate. *See Evertsen v. Industrial Comm'n*, 117 Ariz. 378, 382, 573 P.2d 69, 73 (App.1977) (dicta), *adopted* 117 Ariz. 342, 572 P.2d 804 (1977). Although the respondent employee is nominally a party before this court, his rights will not be affected, since his claim has been established and benefits will be paid either by the SCF or by the Commission's special fund.

covered employees included one pilot, three mechanics, and one clerical worker.

The sales representative made no further investigation and submitted the application to his supervisor, who approved it. On December 18, 1984, the SCF issued a binder effective that day. This agreement to provide compensation insurance was contingent on receipt of both a signed application describing Mar Pac's business operations and payroll and payment of an advance premium. Underwood subsequently signed without modification the insurance application that the sales representative had prepared. The application was then returned to the SCF with the required advance premium payment.

On December 27, 1984, Mar Pac contracted to supply another helicopter and crew to a third tuna boat. The contract required the helicopter to have communication equipment necessary to maintain radio contact with the boat. The contract would become effective when the ship initiated its first fishing trip.

Underwood leased a third helicopter to Mar Pac, and the claimant trucked it to San Diego, where the tuna boat was moored. On December 28, 1984, the claimant intended to fly the helicopter from a local field to the waterfront, land on the boat and co-ordinate communications systems, and then return to the field. While maneuvering on board, the helicopter struck a boom. The claimant was seriously injured and a passenger was killed.

The SCF initially accepted the claimant's compensation claim. But after an investigation, the SCF rescinded its acceptance, denied the claim, and refused to issue a policy of insurance because it "would never have agreed to insure the company's offshore tuna spotting operations had we initially been apprised of the true nature of ... [the] business. It is our opinion and position that this misrepresentation voids the binder agreement of December 17, 1984." The claimant protested the denial of his claim, requested a hearing, and also joined the Commission as a party.

At the scheduled hearing, the parties stipulated that the claimant was injured in an accident arising out of and in the course of his employment. The question of coverage, however, was hotly contested. Mar Pac attempted to establish that it had advised the SCF of the tuna boat operation. It also elicited a concession from the manager of the SCF's underwriting department that "buying, selling and servicing of helicopters ... would include coverage for ferrying the helicopters to various locations including pickup and delivery...."

The SCF, in contrast, attempted to establish that Mar Pac had "fraudulently misstated its business" and that "[h]ad the true nature of the business of Mar Pac been known, the ... [SCF], in good faith would never have issued its insuring binder and would not have undertaken to insure Mar Pac at all."

With the case in this posture, the administrative law judge issued his award. He resolved the factual conflict by finding that although Mar Pac had not consciously suppressed the information, it had not disclosed the tuna spotting operation to the SCF. Furthermore, he found that this failure satisfied the statutory requirement of a fraudulent, material misrepresentation. But relying on *Central Nat'l Life Ins. Co. v. Peterson*, 23 Ariz.App. 4, 529 P.2d 1213 (1975), he nevertheless issued an award finding that coverage existed because:

> "the exact hazard which resulted in the loss, which was the delivery of a helicopter to a tuna boat in the harbor in San Diego, California, was within the contemplated risk of the business activities described in the insurance application.

> "The undersigned concludes that the defendant insurer in this case, the State Compensation Fund, would only have refused to accept the policy for activities which had not yet begun at the time of this accident. Only when the tuna boat headed out to sea with a helicopter and a pilot and a mechanic aboard who were employees of Mar Pac, would the State Compensation Fund have been exposed to hazards which it would have refused to insure."

On review, the SCF argues that it had a statutory right to rescind the binder be-

cause it never would have accepted coverage if Mar Pac had disclosed its tuna spotting operation. It would have rejected coverage not merely because of the hazard this operation represented but also because, among other reasons, it would not insure an employer with employees regularly working out of state.[2] Furthermore, it contended that A.R.S. § 23–963 prevented it from accepting coverage yet excluding the objectionable operation. The administrative law judge, the argument continues, mistakenly required a relationship between the actual loss and the hazard that the SCF would have refused to insure.

Mar Pac answers by arguing that the rescission statute is inapplicable to a compensation carrier and that the SCF is estopped to rely on it. It also asserts for the first time on review that it actually sought coverage exclusively for buying, refurbishing, and selling helicopters in Arizona and that the SCF could and did accept coverage for this operation.

■ We begin our analysis with the terms of the rescission statute itself. It provides in relevant part:

"Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

"1. Fraudulent.

"2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

"3. The insurer in good faith would either not have issued the policy, *or* would not have issued a policy in as large an amount, *or* would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise." A.R.S. § 20–1109 (emphasis added).

Our aim in interpreting a statute is to effectuate the legislative intent. *E.g., Skyview Cooling Co. v. Industrial Comm'n,* 142 Ariz. 554, 558, 691 P.2d 320, 324 (App. 1984). The language itself is the primary

expression of this intent. If the text is unambiguous, it must be interpreted to mean what it plainly states. *E.g., Sunstate Equip. Corp. v. Industrial Comm'n,* 135 Ariz. 477, 479, 662 P.2d 152, 154 (App. 1983).

The three subparagraphs of § 20–1109 are conjunctive. All three therefore must be satisfied. *See Continental Casualty Co. v. Mulligan,* 10 Ariz.App. 491, 493, 460 P.2d 27, 29 (1969). In the present case, the administrative law judge found that Mar Pac made a misrepresentation that was fraudulent and material to the acceptance of the risk. The legal basis for these findings is conceded. The statutory standard for a factual representation is legal fraud. This does not require an intent to deceive. *See Equitable Life Assurance Soc'y of the United States v. Anderson,* 151 Ariz. 355, 357, 727 P.2d 1066, 1068 (App.1986). Furthermore, the misrepresentation directly concerned the risk of insuring Mar Pac. It therefore was material to the acceptance of the risk. *See Continental Casualty Co.,* 10 Ariz.App. at 493, 460 P.2d at 29.

■ Mar Pac, however, does dispute the factual basis for these findings. It argues on review that it accurately represented its Arizona operation and sought coverage exclusively for the pilot, ground crew, and clerical worker involved in this operation. The evidence and arguments Mar Pac presented below directly contradict this position. Underwood testified that he thought he had obtained worldwide coverage provided employees were hired in Arizona. He also testified that Michael told him that he had attempted to describe tuna spotting but that the sales representative had difficulty understanding the operation. Michael testified that although he could not recall the exact words he had used, he had told the sales representative that Mar Pac flew helicopters off boats at sea. Indeed, Mar Pac argued in its post-hearing memorandum that it had disclosed the tuna spotting operation to the SCF. Furthermore, Mar Pac's representation that it had no

---

**2.** The other reasons arise from the out-of-state operation. For example, this restricted the SCF's ability to audit Mar Pac's payroll or practice loss prevention.

other business interests contradicts its current position that it had separate business operations. Finally, this argument is improperly presented for the first time on review. *See, e.g., Norsworthy v. Industrial Comm'n,* 24 Ariz.App. 73, 74, 535 P.2d 1304, 1305 (1975). For all of these reasons, we reject Mar Pac's newly asserted factual argument.

■ The remaining requirement under section 1109 is subparagraph 3. The administrative law judge concluded that subparagraph 3 was unsatisfied because the hazard causing the loss was delivering a helicopter to a moored tuna boat, which "was within the contemplated risk of the business activities described in the insurance application." We reject this conclusion for two reasons.

First, it is factually inaccurate. The claimant simply was not delivering a helicopter when the accident occurred. His sole purpose in landing the helicopter on board was to coordinate communication equipment with the tuna boat. Mar Pac alternatively argues that the claimant was refurbishing, not delivering, the helicopter. To the contrary, Mar Pac had already renovated the helicopter. The coordination of communication equipment with this particular tuna boat was necessary solely to comply with the contract to supply a helicopter for tuna spotting. The most that can be said is that the hazard involved in this landing is similar to the hazard that would be involved if the purpose had been to deliver the helicopter.

■ Second, the administrative law judge has misinterpreted subparagraph 3.

Although it is conjunctive with subparagraphs 1 and 2, its own inner terms are *disjunctive* and therefore satisfied if any of its alternatives apply. Only the third alternative requires a relationship between hazard and loss. The first requires only that the insurer would not have issued the policy if it had known the truth. Which of the alternatives applies to a particular case depends on the facts and the underwriting policy of the carrier. *See Keplinger v. Mid-Century Ins. Co.,* 115 Ariz. 387, 565 P.2d 893 (App.1977). In the present case, it is uncontradicted that, because of the hazard of this operation and because the operation was out of state, the SCF would not have issued the policy if Mar Pac had disclosed its tuna spotting operation.

*Central Nat'l Life,* relied on by the administrative law judge, is consistent with the preceding analysis. The court recognized that subparagraph 3 could be satisfied by demonstrating that the insurer would not have issued the policy. *Central Nat'l Life,* 23 Ariz.App. at 7, 529 P.2d at 1216. It also correctly noted that *"if* the insurer is relying on the fact that it would not have provided coverage with respect to a certain hazard, that particular hazard must be the one which actually caused the loss." *Id.* (Emphasis added). As previously noted, whether a carrier would have refused to issue a policy or would have issued one that excluded a particular hazard is a factual question.[3]

■ Mar Pac also argues that A.R.S. § 23–963 permitted the SCF to exclude coverage for the objectionable operation. We disagree.

**3.** To the extent that *Central Nat'l Life* can be read more broadly, it is unpersuasive. The court correctly noted that subparagraph 3 apparently overruled *First National Benefit Soc'y v. Fiske,* 55 Ariz. 290, 101 P.2d 205 (1940). *Fiske* had held that an applicant's misrepresentation about a prior for life insurance justified rescinding the policy even if the insurer would have issued the policy had it known the truth. *Id.,* 55 Ariz. at 295, 101 P.2d at 207. A subsequent case relied on *Fiske* and the absence of a contrary statute to conclude that Arizona did not require a connection between a misrepresentation and the loss. *See Mutual Life Ins. Co. of New York v. Morairty,* 178 F.2d 470 (9th Cir.1949) *cert.*

denied, 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355 (1950) (applying Arizona law). But it certainly does not follow that by overruling *Fiske* subparagraph 3 required a connection between the misrepresentation and loss in all cases. In its territorial days, Arizona had such a statute. *See Brotherhood of Am. Yeomen v. Manz,* 23 Ariz. 610, 206 P. 403 (1922), *cited in Mutual Life Ins. Co. of New York,* 178 F.2d at 475. Missouri is the leading jurisdiction currently imposing this requirement. *See, e.g.,* Mo.Rev.Stat. § 377.340 (1968) (misrepresentation must have actually contributed to the contingency or event on which policy due and payable).

Workers' compensation insurance must "cover the entire liability of the employer to his employees covered by the policy or contract...." A.R.S. § 23–963. This requires coverage for "all employees in the particular business or occupation of the employer who under the law are entitled to compensation...." *West Chandler Farms Co. v. Industrial Comm'n,* 64 Ariz. 383, 391, 173 P.2d 84, 89 (1946). But if the employer has *independent* businesses, it may cover each with a separate compensation insurance policy. *See Clare v. Malia,* 52 Ariz. 552, 557, 84 P.2d 456, 458–59 (1938).

*Clare* exemplifies the degree of independence required. A receiver in bankruptcy obtained compensation coverage for accountants, investigators, and clerical workers. In the course of liquidation, the receiver took over the operation of a garage. A garage employee was subsequently injured at work. The supreme court concluded that "the business of operating a garage, taken over in the course of liquidation of a bankrupt ..., is an entirely distinct and independent business from the office work and collections necessary to liquidate ... [the bankrupt], and that as a matter of law a policy covering the one business does not necessarily cover the other...." *Id.,* 52 Ariz. at 560–61, 84 P.2d at 460.

Mar Pac's tuna spotting operation was not an independent business in this sense. To the contrary, this operation was the genesis of the business and remained its central enterprise. It was Mar Pac's sole source of income. The helicopters that Mar Pac actually acquired and refurbished were devoted exclusively to the tuna spotting operation. On the other hand, its Arizona facilities consist of Underwood's home as the corporate headquarters and a storage shed without utilities at a local airport.

We therefore conclude that all three subparagraphs of A.R.S. § 20–1109 were satisfied in this case. The next question therefore is whether a compensation carrier may rely on this statute. We conclude that it may.

The Workers' Compensation Act specifically provides that *"[u]nless otherwise provided by law,* the provisions of title 20 ... apply to the state compensation fund to the same extent as any mutual casualty insurer authorized to write workers' compensation insurance in this state." A.R.S. § 23–986(A) (emphasis added). Section 20–1109, of course, is a provision of title 20. The SCF therefore may rely on the rescission statute unless some other provision prohibits this reliance.

Mar Pac asserts that two provisions prohibit this reliance. The first is A.R.S. § 20–1123. It proscribes agreements between the insurer and the insured to annul an insurance contract after a covered loss has occurred. This section by its very terms governs bilateral agreements. It therefore does not apply to an insurer's unilateral rescission of a contract because of the insured's fraudulent, material misrepresentations in the application for insurance.

The second is A.R.S. § 23–961(D). It regulates *cancellations* of compensation insurance:

"Except in the event of nonpayment of premiums, each insurance carrier shall carry a risk to the conclusion of the policy period unless the policy is *cancelled* by the employer. The policy period shall be agreed upon by the insurance carrier and the employer." A.R.S. § 23–961(D) (emphasis added).

Mar Pac asserts that this provision excludes every other mechanism for denying insurance coverage. We disagree. The specific purpose of this provision is to abrogate the common law rule allowing the insurer to cancel the policy in accordance with the terms of the contract. *Home Accident Ins. Co. v. Pleasant,* 36 Ariz. 211, 284 P. 153 (1930). *See generally* 8B J. Appleman, *Insurance Law and Practice* § 5041 (1981). Satisfying this purpose does not require the exclusion of other remedies. For example, mutual mistake of fact justifies reformation of a compensation insurance policy even though an industrial injury has already occurred. *See Madrigal v. Industrial Comm'n,* 69 Ariz. 138,

142, 210 P.2d 967, 970 (1949). This same analysis extends to rescission based upon misrepresentation: "Provisions of a statute relating to cancellation do not bear upon rescission, nor upon the right to defend on the basis of misrepresentation." 12A Appleman, *supra*, § 7255 at 289-90 (footnotes omitted). Moreover, this reconciliation of the rescission statute with the cancellation statute is consistent with the general rule that statutes *in pari materia* should be harmonized, if possible. *See generally Collins v. Stockwell,* 137 Ariz. 416, 419, 671 P.2d 394, 397 (1983).

We therefore reject Mar Pac's assertion that these two provisions prohibit the SCF from relying on section 20-1109. We note that the leading compensation treatise supports restricting compensation carriers to civil damages in situations similar to that involved in this case:

> "As between the insurer and the employee ... defenses based upon the misconduct or omissions of the employer are of no relevance. Fraudulent statements by the employer preceding and inducing the issuance of the policy are no defenses against the employee...." 4 A. Larson, *Workmen's Compensation Law* § 92.22 at 17-10 to -11 (1987) (footnotes omitted).

Arizona followed this rule before the adoption of A.R.S. § 23-907(B). *See West Chandler Farms Co.,* 64 Ariz. at 392, 173 P.2d at 90. The SCF, however, correctly points out that the purpose of this rule was to protect the employee, not the employer. *See* 4 Larson, *supra*, § 92.21. Because in Arizona the special fund now protects the employee of an uninsured employer, there is no longer any purpose for such a rule.

 Mar Pac's last argument is that the SCF is estopped to rely on section 20-1109. We disagree that this question is ripe for appellate resolution. Although Mar Pac raised this argument in its post-hearing memorandum, the administrative law judge resolved the coverage question without addressing estoppel. The award therefore lacks critical factual findings. *Cf. State Compensation Fund v. Industrial Comm'n,* 136 Ariz. 442, 444, 666 P.2d 542, 544 (App.1983) ("legal and factual issues are best resolved in the first instance by the Commission"). Additionally, our review of the record does not reveal factual support for a finding of estoppel.

For the foregoing reasons, we set aside the award.

BROOKS, P.J., and FIDEL, J., concur.