727 P.2d 1066

The EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED
STATES, Plaintiff-Appellee,

v.

Paul A. ANDERSON,
Defendant-Appellant.

1 CA–CIV 8361.

Court of Appeals of Arizona,
Division 1, Department D.

May 29, 1986.

Reconsideration Denied July 28, 1986.

Review Denied Nov. 12, 1986.

Evans, Kitchel & Jenckes, P.C. by Leon
D. Bess, Phyllis S. Kilbreath, Phoenix, for
plaintiff-appellee.

Manross & LaGanke, P.C. by Marvin W. Manross, Phoenix, for defendant-appellant.

FROEB, Chief Judge.

In an action for declaratory relief, Equitable Life Assurance Society of the United States (Equitable) sought rescission, pursuant to A.R.S. § 20–1109, of its major medical policy issued to Paul Anderson. Equitable claimed that Anderson's statement that he was not an habitual user of drugs constituted legal fraud. Following a trial to the court, declaratory judgment was granted in favor of Equitable.

On appeal, Anderson argues that his statement that he was not an habitual user of drugs could not constitute legal fraud since his statement was merely his opinion. We disagree and affirm the judgment.

## FACTS

On December 7, 1982, Paul Anderson (Anderson) completed an application for the insurance policy at issue. Suzy Schmidt-Taub, who later married Anderson in 1984, and Carl Gottlieb were also present at the occasion. One question on the application asked, and Anderson answered, as follows:

> Are you now or have you within the last ten years been a habitual user of barbiturates, amphetamines, hallucinatory drugs or narcotics except as prescribed by a physician? _ YES X No.

The application stated that the applicant's answers were true and complete to the best of the applicant's knowledge and belief.

On January 15, 1983, Anderson was admitted to a hospital emergency room for treatment of a heroin overdose. Dr. Charles R. Breed was Anderson's attending physician during Anderson's two-day hospital stay. According to Dr. Breed, Anderson did not have any symptoms consistent with heroin addiction at the time of his hospitalization. Dr. Breed testified that Anderson had told him that he had used heroin three or four times a year for the past several years, and that he had tried cocaine and several other drugs. Dr. Breed testified that Anderson stated during his hospital stay that he had, in the past, been a heavy user of drugs and eight years ago had withdrawn from heroin. On the basis of these statements, Dr. Breed concluded in his "History and Physical" report that Anderson had a "history of heroin addiction which he says he stopped on his own 8 years ago," and that "[h]is history is remarkable for his addiction."

Anderson's testimony indicates that his heaviest usage of drugs occurred approximately eight years before he applied for health insurance. He testified that at that time he used heroin, hallucinatory drugs, and barbiturates frequently, but did not use them regularly. He did not remember describing a "withdrawal" from drug use to Dr. Breed. Nor did he remember saying he had been "into the drug scene heavily." Anderson testified that he had stopped using heroin in 1974 and that he started using it again in 1978. Anderson testified that between 1978 and 1982 he took heroin or dilaudid approximately five times a year and that he took heroin two to three times in the three-or-four-month period preceding January 15, 1983. Anderson testified that he felt he was able to control his usage of drugs, and that his usage was not habitual during that ten-year period.

Ralph Pisani, underwriting manager for Equitable, testified about the underwriting practices relating to an applicant's disclosure of drug usage. In 1982, if an applicant disclosed that he had used narcotics at any time during the four years prior to the date of the application, no policy would be issued. If an applicant disclosed that he had used narcotics from four to approximately ten years prior to the date of the application, additional inquiries would be made and a rated policy, not a standard policy, would be issued.

Anderson submitted a claim for insurance benefits to Equitable for the hospital bills resulting from the heroin overdose. Equitable denied liability on the basis that Anderson did not disclose "[p]ast history of drug addiction per information furnished from [the hospital]."

■ The parties did not request findings of fact or conclusions of law by the trial court and none were made. Under these circumstances, the decision will be affirmed if it is supported by any reasonable evidence. *Apache East, Inc. v. Wiegand,* 119 Ariz. 308, 580 P.2d 769 (App.1978).

## DISCUSSION

Arizona Revised Statutes, § 20–1109 states:

All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

1. Fraudulent.

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

In *Continental Casualty Co. v. Mulligan,* 10 Ariz.App. 491, 460 P.2d 27 (1969), this court held that "[t]he first two subparagraphs of A.R.S. Sec. 20–1109 appear to be a codification of prior Arizona decisions requiring that an insurance company attempting to void a policy must prove that the applicant was guilty of *legal* or *actual* fraud, and that such fraud was material to the acceptance of the risk or hazard assumed by the insurer." 10 Ariz.App. at 493, 460 P.2d at 29 (emphasis in original).

■ The difference between legal fraud and actual fraud is one of intent. Actual fraud requires an intent to deceive while legal fraud does not. *See Smith v. Republic National Life Insurance Co.,* 107 Ariz. 112, 483 P.2d 527 (1971).

The theory of legal fraud was discussed in *Illinois Bankers' Life Assn. v. Theodore,* 44 Ariz. 160, 34 P.2d 423 (1934). In that case the supreme court explained under what circumstances legal fraud may be found:

[I]f a question [asked in an insurance application] is one where the facts are presumably within the personal knowledge of the insured, and are such that the insurer would naturally have contemplated that his answers represented the actual facts, if the representation be false, the insured is guilty of legal fraud, although as a matter of fact he may not have intended to deceive the insurer; but that where the question is of such a nature that a reasonable man would know that it represented merely the opinion of the insured, there must be an actual intent to deceive and bad faith on the part of the insured.

44 Ariz. at 170–171, 34 P.2d at 427. *See also Mutual Life Ins. Co. of New York v. Morairty,* 178 F.2d 470 (9th Cir.1949), *cert. denied,* 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355 (1950); *Smith v. Republic National Life Insurance Co.; Modern Woodmen of America v. Stevens,* 70 Ariz. 232, 219 P.2d 322 (1950); *Woodmen of the World Life Ins. Soc. v. Velasquez,* 60 Ariz. 457, 139 P.2d 766 (1943); *Sovereign Camp, W.O.W. v. Sandoval,* 47 Ariz. 167, 54 P.2d 557 (1936); *Illinois Bankers Life Assn. v. Theodore,* 47 Ariz. 314, 55 P.2d 806 (1936); *Central National Life Ins. Co. v. Peterson,* 23 Ariz.App. 4, 529 P.2d 1213 (1975); *Continental Casualty Co. v. Mulligan.*

To defeat Equitable's claim of legal fraud, Anderson contends that the question, "are you now or have you within the last ten years been a habitual user of barbiturates, amphetamines, hallucintory drugs or narcotics ...?", elicits an opinion, not a matter of fact, and therefore Equitable cannot rescind the policy on the basis of legal fraud.

Whether a question, set forth in an insurance application, elicits a factual answer or an opinion may depend upon the evidence

in the particular case. For example, the question, "is the insured of sound body?", was held to be a question eliciting an opinion in *Schwarzbach v. Ohio Valley Protective Union*, 25 W.Va. 622, 52 Am.Rep. 227 (1885), *overruled on other grounds, Rosenthal Co. v. Insurance Co.*, 55 W.Va. 238, 46 S.E. 1021 (1904). However, in *Modern Woodmen of America v. Stevens*, the same question was held to elicit a factual answer based on the evidence presented in that case. *See also Illinois Bankers' Life Assn. v. Theodore*, 44 Ariz. 160, citing, *Schwarzbach* and discussing the subject.

We turn then to the evidence in the present case to decide whether the question asked by Equitable involved an opinion or a statement of fact from Anderson. Anderson argues that the use of the word "habitual" compels a conclusion that the question elicits an opinion since the meaning of "habitual" is subjective.

 We disagree with Anderson. We hold that on the evidence presented, Equitable's question elicited a factual answer. Dr. Breed testified that Anderson told him that eight years before his hospitalization, he had withdrawn from heroin. Anderson did not contradict this statement, but said only that he did not remember making it. The fact that Anderson withdrew from heroin is evidence that his use of the drug was habitual at that point in time. While the word "habitual" may be subject to various definitions, Anderson's withdrawal from heroin use necessarily places his drug usage into the ordinary sense of the word "habitual." [1] Under these circumstances, no reasonable person could view this drug usage as susceptible to an opinion that it was not habitual. Therefore, as a matter of law in this case, based upon the uncontradicted evidence, Anderson's answer to the question constituted a statement of fact and not opinion. In this regard, *Illinois Bankers Life Assn. v. Theodore*, 47 Ariz. 314, 55 P.2d 806 (1936) is instructive and supports this conclusion. There, the question, "have you ever had habitual coughing?" was held as a matter of law to elicit a factual response under the circumstances presented in that case. The court held:

> The exact place where the dividing line is to be drawn between a cough which is "habitual" and one which is merely sporadic cannot always be stated as a matter of law. It is frequently a mixed question of law and fact. But there are undoubtedly certain extremes when, from the facts as shown by the evidence, the court can and should say, as a matter of law based on such facts, that the cough so shown either is or is not habitual. As illustrations, if the facts showed that the applicant had been known to give a single slight cough at intervals of three or four days, as a matter of law the court should hold that it was not habitual. On the other hand, if the coughing was so continuous and insistent that the applicant was confined to his bed on account of the physical exhaustion caused thereby over a considerable period of time, it would clearly, as a matter of law, be classed as habitual.

47 Ariz. at 325, 55 P.2d at 810–811.

 We conclude therefore that Anderson's answer was false. Moreover, there is sufficient evidence that it was material to the acceptance of the risk assumed by Equitable in insuring Anderson. Equitable's underwriting manager indicated that had Anderson's reply correctly reflected the facts, Equitable would not have issued the standard policy which had been

---

1. "Withdrawal symptom" is defined as "one of a group of symptoms (as nausea, sweating, or depression) produced in a person by deprivation of an addicting drug." *Webster's Third New International Dictionary* 2626 (Unabridged 1969).
 "Habitual" is also defined as "an habitual offender; *esp:* an habitual drunkard, criminal, or user of drugs: addict." *Id.* at 1017.

"Habit" is defined as "a behavior pattern acquired by frequent repetition or developed as a physiologic function and showing itself in regularity ... an increased facility of performance or in a decreased power of resistence [a drug]." *Id.* at 1017.

issued to Anderson. Accordingly, the trial court correctly allowed Equitable to rescind the insurance policy pursuant to A.R.S. § 20–1109.

We also reject Anderson's remaining arguments. First, he contends that the insurance application question was ambiguous and that the ambiguity should be construed in favor of Anderson. *See Continental Casualty Co. v. Mulligan.* For reasons earlier discussed, we do not agree that the question was ambiguous.

■ Second, we reject Anderson's alternative argument that the policy cannot be rescinded because it stated: "The above statements are true and complete to the best of my knowledge and belief." Anderson argues here that this prevents his answer from being a misrepresentation of fact. The argument lacks merit because under the theory of legal fraud the insured's beliefs concerning statements made are immaterial.

■ In summary, we hold that for an insurer to prevail on an action of legal fraud based upon an answer to a question in the application, it must prove that the question elicited a *factual response* from the insured, that the insured's answer to the question was false, that the answer was material to the acceptance of the risk or to the hazard assumed by the insurer, and that the insurer would not have issued the policy which was issued. If, however, the question elicits an *opinion* of the insured, the insurer may not rescind the policy based on legal fraud, but must prove actual fraud on the part of the insured, i.e., prove an intent to deceive. Whether a question elicits a factual response or an opinion is a matter for the trier of fact to decide based on the particular facts of each case, unless reasonable persons could not differ as to whether the answer was a statement of opinion or a statement of fact. When the latter is the case, as here, the question becomes one of law.

For the reasons set forth, the judgment is affirmed. The claim of Equitable for attorney's fees is, in our discretion, denied.

GRANT, P.J., and BROOKS, J., concur.