821 P.2d 757

**Sherri GREVES, Plaintiff–Appellant,**

v.

**OHIO STATE LIFE INSURANCE COMPANY, an Ohio corporation, Defendant–Appellee.**

**No. 1 CA–CV 89–462.**

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 26, 1991.

Jennings, Strouss & Salmon by H. Christian Bode and James M. Ackerman, Phoenix, for plaintiff-appellant.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by Thomas A. McGuire, Phoenix, for defendant-appellee.

## OPINION

TAYLOR, Judge.

Sherri Greves (Mrs. Greves) appeals from the trial court's grant of two cross-motions for summary judgment in favor of Ohio State Life Insurance Company (the Company) and from the trial court's denial of her motions for partial summary judgment. The trial court ruled that the incontestability clause of a $500,000.00 life insurance policy purchased by Dr. Ross I. Greves is not ambiguous and requires that the insured survive for two years after the effective date of the policy before the incontestability provision takes effect. The trial court also found that the Company could rescind the policy pursuant to Arizona Revised Statutes Annotated [hereinafter A.R.S.] § 20–1109(3) because if the true facts had been known about Dr. Greves's medical history when he applied for the policy, the Company either would have declined to issue the policy or would have issued a rated policy, which is different from that which it issued. Finally, the trial court found that the Company's failure to reject the claim within two months after the claim was filed did not render the Company liable to pay the full policy limit to Mrs. Greves.

## FACTS AND PROCEDURE

Because this is an appeal from summary judgment, we view the facts in the light most favorable to Mrs. Greves, the party against whom judgment was entered. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). On August 30, 1984, Ross I. Greves, a 38 year-old chiropractor, completed an application for a $500,000.00 life insurance policy with the Company. The application contained the question "Has any person to be covered ever been treated for or had any known indication of: Cancer or any tumor or lesion?" Dr. Greves answered "No." Another question asked whether he had undergone any surgical operations, to which he answered "No."

On September 12, 1984, as part of his application, Dr. Greves submitted to a physical examination and questionnaire by a paramedic. To the question "Have you ever been treated for or had any known indication of: Disorder of skin, lymph glands, cyst, tumor or cancer?" Dr. Greves answered "Yes." The explanation written on the application was: "1977 Mole removed from right side of chest. Benign Mole. Tempe Community Hospital ... Dr. Adrian...."

The Company subsequently issued a standard $500,000.00 life insurance policy to Dr. Greves. The premium was $3,000.00 a year. Approximately three months after completing the application, Dr. Greves sought medical attention for a developing mass under his right arm. On January 4, 1985, the mass was surgically removed and a biopsy revealed that it was a malignant melanoma. On April 19, 1986, despite a course of follow-up treatment and surgery, Dr. Greves died of metastatic melanoma.

On June 27, 1986, the Company received a claim for the policy proceeds from Sherri Greves, Dr. Greves's widow and beneficiary. Dr. Greves's policy contained a standard clause known as the "incontestability clause." It stated that "[w]e cannot contest this policy after it has been in force, during your lifetime, for two years from its date of issue...." The policy was issued on August 30, 1984. Dr. Greves died less than two years after the policy's date of issue and within the period of contestability.

It is the Company's policy to investigate all life insurance claims that occur within the contestability period. Consequently, the Company commenced an investigation upon receipt of Mrs. Greves's claim. As part of this investigation, the Company sought information regarding the mole removal. Even though neither Dr. Adrian nor Tempe Community Hospital could locate all of their records regarding this treatment, the Company learned that Dr. Greves had been admitted to Tempe Com-

munity Hospital on April 23, 1976 for wide excision surgery to remove any remaining malignant tissue around the site of the mole removed by Dr. Adrian. The pathology report from the wide excision surgery indicated that no malignant tissue was present and referred to the previous pathology report from the mole removed by Dr. Adrian as follows: "Skin segment with previous malignant melanoma excision site, clinically from chest wall." Thus, the Company learned that the mole had been a malignant melanoma, contrary to Dr. Greves's completed application for insurance coverage and subsequent physical exam.

Based on this discovery, the Company contends that if Dr. Greves had properly disclosed this information on his 1984 application for life insurance, the Company would have required him to submit to a medical examination to determine if the malignancy had recurred. If it had recurred, the Company would not have issued the policy. The Company further contends that even if the examination had revealed no recurrence of the malignancy, the policy would have been issued as a "rated" policy. Thus, Dr. Greves would have had to pay a higher premium for the standard policy.[1] Based on these conclusions, the Company "resigned" the policy. On October 23, 1986, the Company mailed to Mrs. Greves a letter explaining its denial of her claim and a check for $5,000.00, which was the amount of premiums paid to that date.

On July 1, 1988, Mrs. Greves filed suit against the Company. She alleged that by refusing to pay the benefits under the policy, the Company breached its contract of insurance and intentionally and tortiously breached its duty of good faith and fair dealing. She requested a judgment ordering payment of the $500,000.00 face amount of the policy as well as compensatory and punitive damages for the breach of good faith.

Mrs. Greves subsequently filed a motion for partial summary judgment, arguing that the Company could not contest the policy. She argued that the incontestability provision, as written in the policy, should be interpreted to mean that the period to contest the policy expired two years from the date of issue, as long as the insured was alive for at least part of that period. The motion asserted that the Company did not contest the policy until it issued its denial of coverage in October 1986, more than two years after the issuance of the policy.

The Company responded and filed a cross-motion for summary judgment. This provision, it argued, meant that the insured must live for two years after the policy's date of issue before the policy could become incontestable. The court agreed, granting the Company's motion for partial summary judgment and denying Mrs. Greves's motion.

Thereafter, Mrs. Greves filed another motion for partial summary judgment, contending that the Company violated the terms of its insurance contract. She argues that by waiting more than four months to deny her claim, the Company was required to pay the claim in full. The motion also asserted that the Company's basis for denying the claim was legally insufficient under A.R.S. § 20–1109 because (1) the Company could not prove that it would not have issued the policy, and (2) a rated policy did not meet the requirements of § 20–1109(3).

The Company opposed this motion and filed its cross-motion for summary judg-

1. In the trial court, the Company also argued that it would be able to prove Dr. Greves's application would have been denied in part because there was no record that Dr. Greves had follow-up care after his surgery in 1976. The underwriting manual recommends that an application be declined if the underwriters are unable to secure dates and details of diagnosis, treatment, and follow-up care. A representative of the Company testified at his deposition: "I emphasize follow-up care on cancer because it's very important and usually in my judgment even when I was doing cases, it would be a decline with a malignant melanoma no matter how much time is elapased [sic]." Apparently, however, the trial court did not base its grant of summary judgment in favor of the Company on this argument because the court found that "a rated policy, as a matter of law, is a different policy from a standard policy" such that A.R.S. § 20–1109(3) applied.

ment. It asserted that there is no authority for requiring payment of a claim if the insurer's denial of the claim is untimely. It also argued that it would have, at best, issued a rated policy satisfying A.R.S. § 20–1109. Because a rated policy is not the same as a standard policy, the Company contended that it would not have issued the policy for which Dr. Greves applied. Again, the trial court agreed with the Company and granted judgment in favor of Company and denied Mrs. Greves's motion.

Mrs. Greves timely appealed from the summary judgments granted in favor of the Company and from the denial of her motions for partial summary judgment.

## DISCUSSION

### The Incontestability Clause

Arizona law requires that all life insurance policies contain an incontestability provision. A.R.S. § 20–1204.[2] This provision in Dr. Greves's life insurance policy stated: "We cannot contest this policy after it has been in force, during your lifetime, for two years from the date of issue...." Mrs. Greves points out that this provision in the policy differs from the statutory language of A.R.S. § 20–1204 because the policy has commas around the phrase "during your lifetime" while the statute does not. She argues that due to the addition of the commas, viewed according to rules of English grammar, the provision means that the policy was incontestable once it was in effect during Dr. Greves's lifetime and after two years had passed since its issuance. Consequently, she concludes that because the policy was in effect during Dr. Greves's lifetime and the Company did not contest the policy by denying coverage until more than two

**2.** A.R.S. § 20–1204 provides, in pertinent part:
There shall be a provision that the policy ... shall be incontestable, *except for nonpayment of premiums*, after it has been in force during the lifetime of the insured for a period of two years from its date of issue.

**3.** The Pennsylvania statute provides that all life insurance policies shall contain "[a] provision that the policy shall be incontestable after it has been in force, during the lifetime of the insured, two years from its date of issue...." *Carpen-*

years after it was issued, the policy had become incontestable before the Company contested it.

█ The trial court found that the proper interpretation of the policy language was that the insured was required to live for a minimum of two years before the policy would become incontestable. We agree. Other states have incontestability statutes containing language similarly enclosed in commas. *Lance v. Prudential Ins. Co.*, 19 N.J. Misc. 551, 22 A.2d 3 (1941); *Carpentieri v. Metropolitan Life Ins. Co.*, 138 Pa.Super. 1, 10 A.2d 37 (1939). These jurisdictions have interpreted the language to mean that the policy does not become incontestable until the insured survives the requisite time period from the effective date of the policy. *Lance*, 19 N.J. Misc. 551, 22 A.2d 3; *Carpentieri*, 138 Pa.Super. 1, 10 A.2d 37. We find the reasoning from the *Lance* and *Carpentieri* cases to be sound.

In *Carpentieri*, the incontestability period was one year. The insured died five months after the life insurance policy was issued, but the insurance company did not file suit to contest the policy until two years after his death. 138 Pa.Super. 1, 2–3, 10 A.2d 37, 38. Both the policy incontestability provision and the Pennsylvania statute contained commas around the phrase "during the lifetime of the insured."[3] The plaintiff contended that the death of the insured during the one-year period had no effect and that because the carrier failed to file suit within that period, the contest was barred. *Id.* at 4, 10 A.2d at 38. The court disagreed, however, and found that the provision was clear and unambiguous:

*tieri*, 138 Pa.Super. at 6, 10 A.2d at 39. The policy provision at issue provided that "[t]his Policy shall be *incontestable* after it has been in force, during the lifetime of the Insured, for a period of one year from its date of Issue, except for nonpayment of premiums...." *Id.* at 6, 10 A.2d at 38. The Pennsylvania statute and the policy incontestability provision are therefore in accord with each other, except as to the contestable period.

There does not seem to be any ambiguity in the clause relied upon by appellant. The provision, "during the lifetime of the insured," clearly modifies and qualifies the phrases "in force" and "for a period of one year." We think the company agreed by this clause of its policy that it would not contest its liability, upon any ground ... after a period of one year had elapsed from its date of issue, provided the insured did not die within that year.

*Id.* at 7, 10 A.2d at 39.

The court in *Carpentieri* also discussed the purpose of the clause, which is consistent with the finding of the court regarding the meaning of the incontestability provision: "Evidently, one of the objects sought to be attained by the insertion of the clause was the protection of the company from imposition by persons who might procure insurance by concealing ill health of such a serious nature as to cause death within a year." *Id.; see also Cragun v. Bankers Life Co.*, 28 Utah 2d 19, 21, 497 P.2d 641, 643 (1972) ("[T]he incontestability period ... is simply a period during which time the insurer may by investigation guard against risks it did not intend to assume.").

In addition, the court in *Carpentieri* impliedly answered the argument that the phrase within the commas was non-restrictive:

Here, however, the words "during the lifetime of the insured" were intended to have some meaning. We think the common sense construction of the clause is that the company said to the insured, if you live for a period of one year after the policy has issued we will not, after the expiration of that year, contest our liability upon any ground except non-payment of premiums or misstatement of your age.

138 Pa.Super. at 7–8, 10 A.2d at 40.

Similarly, in *Lance*, the court construed a policy providing that it was incontestable "after it has been in force, during the lifetime of the Insured, for one year from its date of issue...." 19 N.J. Misc. 551, 552, 22 A.2d 3. The plaintiff argued that the death of the insured within the one-year period had no effect because the insurance company failed to initiate its contest of the policy before the year expired. *Id.* at 552, 22 A.2d at 3–4. The court disagreed, finding that

[t]his language has a normal and purposeful meaning; under this wording, the insured must live for at least one year after the policy is issued before it can mature into incontestability; if the insured dies before the end of that year has been reached, the policy remains contestable and never becomes incontestable against a valid defense.

*Id.* at 553, 22 A.2d at 4.

■ The grammatical construction argument advanced by Mrs. Greves is not persuasive. The English grammar articles relied upon by Mrs. Greves and her expert all define restrictive and nonrestrictive clauses as noun modifiers. In the policy provision in question, we construe the phrase "during your lifetime" as a prepositional phrase that modifies "in force," which is used as an adjective. Thus, it appears to us that the rules for non-restrictive clauses do not apply to the policy provision.

■ Mrs. Greves argues that this language creates ambiguity and that ambiguous language in an insurance policy must be construed strictly against the insurance company. *Sparks v. Republic Nat'l. Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). We disagree. Mrs. Greves has cited no case holding that the language in question is ambiguous or non-essential. Further, we are persuaded by the fact that apparently no court has found language such as that in the policy to be ambiguous or to have the meaning urged by Mrs. Greves. We do not believe the addition of the two commas makes the contestability provision ambiguous.

■ Moreover, we do not believe that the addition of the two commas changes the meaning from that required by A.R.S. § 20–1204. Accordingly, we hold that because Dr. Greves did not survive for two years after issuance of the policy, the Company was not precluded from contesting it.

*Timeliness of Claim Denial Under A.R.S. § 20–1215*

Mrs. Greves argues that the Company should be liable to pay the full face value of the life insurance policy to her as a penalty for violating A.R.S. § 20–1215. She asserts that the Company violated this statute by failing to either pay or deny her claim within two months after she submitted it to the Company. The trial court found that even if the Company violated § 20–1215 by not rejecting the claim within two months of its submission, a mandatory sanction for the full policy limit against the Company was inappropriate.

■ Although a slightly different legal analysis was used, we agree with the result reached by the trial court. The responsibilities of insurance companies are set forth in A.R.S. § 20–1215 as follows:

> There shall be a provision that when a policy becomes a claim by the death of the insured settlement shall be made upon receipt of due proof of death and, at the insurer's option, surrender of the policy, proof of the interest of the claimant, or both. If an insurer specifies a particular period prior to the expiration of which settlement shall be made, the period shall not exceed two months from the receipt of such proofs.

We construe this statute as requiring that any life insurance policy delivered or issued for delivery in Arizona must contain a provision stating when the claim must be paid and that this claim settlement period may not exceed two months from receipt of proof of death. The contract provision would then determine the period in which the claim must be settled. The policy issued by the Company to Dr. Greves did not contain a specific time period for settlement. It states: "We will pay the amount payable at death to your beneficiary upon receipt at our home office of acceptable proof of your death as provided by this policy." We interpret this provision as requiring payment within a reasonable period, not to exceed two months, after receipt of acceptable proof of death.

■ We reject Mrs. Greves's contention that the Company must pay her the face value of the insurance policy as an automatic sanction for its failure to pay either within the contract period or within the statutory two-month period. Mrs. Greves has not cited nor do we find any statute or insurance department regulation that supports the penalty urged by Mrs. Greves. The remedies available to an insured for tardy settlement of a claim do not include the sanction sought by Mrs. Greves, but rather are found among the traditional remedies for breach of contract.

*Rescission of the Policy Under A.R.S. § 20–1109*

Mrs. Greves argues that an insurance company may rescind a policy due to misrepresentation in the policy application but only if the situation falls under the provisions of A.R.S. § 20–1109. She argues that the facts of record do not establish a basis for rescission under this statute. We agree. A.R.S. § 20–1109 provides:

> All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:
>
> 1. Fraudulent.
> 2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.
> 3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

■ Rescission of an insurance policy is permitted only if all three subparagraphs of § 20–1109 are satisfied. *State Compensation Fund v. Mar Pac Helicopter Corp.,* 156 Ariz. 348, 352, 752 P.2d 1, 5 (App.1987). The burden is on the insurance company to prove each element before rescission is al-

lowed. *Continental Casualty Co. v. Mulligan*, 10 Ariz.App. 491, 495, 460 P.2d 27, 31 (1969). The only issue on appeal is whether the Company can prove any of the grounds for rescission in subparagraph 3.

The first clause of § 20–1109(3) permits rescission if the insurance company can show that it would not have issued the policy. The second and third clauses allow rescission if the insurer "would not have issued a policy in as large an amount" or if the insurer "would not have provided coverage with respect to the hazard resulting in the loss."

 We interpret A.R.S. § 20–1109(3) to mean that issuing a policy with a lower face amount or excluding a certain hazard is not the same as refusing to issue the policy. If the insurer would have issued the policy with some changes, rescission is available only if the changes are one of the two listed in § 20–1109(3). Further, the language "would not have issued the policy" means that the insurer would not have issued any policy. The statute does not permit rescission if the insurer merely would have charged a higher premium for the coverage for which the insured applied.

This result is compatible with *Equitable Life Assurance Society v. Anderson*, 151 Ariz. 355, 727 P.2d 1066 (App.1986). The court in *Anderson* did not expressly address the language of § 20–1109(3), nor did it decide whether a rated policy would satisfy § 20–1109(3). In *Anderson*, the issue on appeal was whether Anderson's statement that he was not an habitual drug user was merely his opinion such that it could not constitute legal fraud in his application for a major medical policy. The insurer testified that if an applicant had used narcotics at any time during the four years prior to the date of the application, which Anderson had, no policy would be issued. *Id.* at 356, 727 P.2d at 1067. The insurer further testified that if the applicant had disclosed that he had used narcotics from four to approximately ten years prior to the application, a rated policy, not a standard policy, would be issued. *Id.* The court held that Anderson's answer on the application was a false factual statement

material to the acceptance of the risk. *Id.* at 358, 727 P.2d at 1069. The court concluded that, based on the insurer's testimony, it "would not have issued the standard policy which had been issued to Anderson. Accordingly, the trial court correctly allowed [the insurer] to rescind the insurance policy pursuant to A.R.S. § 20–1109." *Id.* at 358–59, 727 P.2d at 1069–70.

It appears the court could have believed that the policy issued to Anderson would not have been the standard policy because it would have excluded coverage for treatment of narcotics-related medical problems. Furthermore, the evidence disclosed that the insurer would have declined coverage if Anderson had used drugs within four years prior to the application, and the evidence revealed that he had done so. In light of these aspects of *Anderson*, we do not believe, as urged by the Company, that the court in *Anderson* held that a policy with an increased premium meets the requirement of the first clause of § 20–1109(3) (i.e., that the Company "would ... not have issued the policy.").

This interpretation is supported by dicta in other cases decided by this court. In *Continental· Casualty Co.*, the court of appeals considered whether the insurer could cancel disability policies issued to an applicant who had failed to disclose previous medical treatment. Discussing the application of subparagraphs 2 and 3 of A.R.S. § 20–1109, the court noted that "[t]hese subparagraphs require a showing that the misrepresentations or omissions were material to the acceptance of the risk or to the hazard assumed by the insurer, and that the insurer would have *rejected* or *limited* the coverage if the true facts had been disclosed." 10 Ariz.App. at 495, 460 P.2d at 31 (emphasis added). Charging a higher premium for an issued policy is neither rejecting nor limiting coverage. Similarly, in *State Compensation Fund v. Mar Pac Helicopter Corp.*, 156 Ariz. 348, 752 P.2d 1 (App.1987), the court stated that, in applying A.R.S. § 20–1109(3) to the facts before it, "whether a carrier would have refused to issue a policy or would have issued one that excluded a particular

hazard is a factual question." *Id.* at 353, 752 P.2d at 6. While not deciding the issue, the court in both of the above cases referred to the first clause of § 20–1109(3) as declining coverage or refusing to issue a policy.

In *Keplinger v. Mid–Century Insurance Co.,* 115 Ariz. 387, 565 P.2d 893 (App.1977), the court was asked to determine whether an automobile policy provided coverage for injuries sustained in an accident. The insurance company argued that because representations made in the application regarding use of the vehicle were false, fraudulent, material, and relied upon by the insurer, the coverage was vitiated. *Id.* at 390, 565 P.2d at 896. It maintained that it would not have provided the coverage if it had known that the vehicle was used for commercial purposes and driven for long distances. *Id.* The court held that the insurer did not satisfy its burden to prove that it would not have issued the policy in light of the fact that it continued coverage after the accident at an increased premium. *Id.* at 391, 565 P.2d at 897. It further found that in the face of this evidence, the trial court could not find that the insurer would not have provided coverage for the hazard that caused the loss. *Id.* at 392, 565 P.2d at 898. Thus, the court concluded that the insurer's intent to charge a higher premium for the policy was insufficient to allow rescission of coverage for the accident.

The Company asserts that it satisfies the first clause of § 20–1109(3) because charging a higher premium means that it would not have issued the policy for which Dr. Greves applied. We disagree. This interpretation would render the second and third clauses of subsection 3 meaningless. These clauses specify two changes the insurer would have made in the policy if it had known the true facts; one is a reduction in the coverage amount and the other is exclusion of the hazard resulting in the loss. If a change in the premium charged would constitute issuing a different policy, then the changes specified in the second and third clauses would also constitute issuing a different policy. In all three instances, the policy issued would not be the same as the policy originally contemplated. As a consequence, the second and third clauses would be redundant because they would apply only in situations in which the first clause also applied.

■ Statutory provisions must be considered in the context of the entire statute to determine the legislature's intent. *Pinto Valley Copper Corp. v. Arizona Dep't of Economic Sec.,* 146 Ariz. 484, 486, 706 P.2d 1251, 1253 (App.1985). Whenever possible, a statute should be interpreted so that "no clause, sentence, or word is rendered superfluous, void, contradictory or insignificant." *State v. Superior Court,* 113 Ariz. 248, 249, 550 P.2d 626, 627 (1976). We presume that the legislature does not intend to include in statutes provisions that are "redundant, void, inert and trivial." *State v. Edwards,* 103 Ariz. 487, 489, 446 P.2d 1, 3 (1968). Because the Company's interpretation of A.R.S. § 20–1109(3) would render two of the clauses redundant and superfluous, we reject its interpretation.

■ A recognized rule of statutory construction holds that an expression of one or more items of a class indicates the intent of the legislature to exclude all items of the same class not included. *Pima County v. Heinfeld,* 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982). The statute does not mention that rescission is available for increased premiums. We conclude that if the legislature had intended to permit rescission should the insurer increase the premium, it would have indicated such in the statute.

Accordingly, for the reasons discussed above, we hold that issuing a rated policy, meaning a policy with an increased premium, is not the same as not issuing the policy and thus does not permit rescission of the policy under A.R.S. § 20–1109.

■ Nevertheless, we do not believe that the court erred in denying Mrs. Greves's motion for summary judgment on coverage. As the court in *State Compensation Fund v. Mar Pac Helicopter Corp.* observed, it is a factual question whether an insurer would have refused to issue a policy or would have issued one that excluded a particular risk, 156 Ariz. at 353,

752 P.2d at 6, or, we add, would not have issued the policy in as large an amount. We cannot say as a matter of law, and based on the record before us, that the Company is unable to prove any of the elements of § 20–1109(3). The Company is entitled to present its evidence to the trier of fact on this question. Therefore, we remand for further proceedings consistent with this opinion.

Both parties have requested awards of attorneys' fees and costs on appeal pursuant to A.R.S. § 12–341.01. In our discretion, we deny both requests.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of judgments regarding the incontestability provision and timeliness of the rejection of the claim and its denial of Mrs. Greves's motions. We reverse the trial court's judgment that the Company could properly rescind the policy under A.R.S. § 20–1109(3) and remand for further proceedings.

EHRLICH, P.J., and FIDEL, J., concur.